IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JACOB MILLER, ZACHARY PENOR, both individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 06-1730-KI |
| vs. | ) ) | OPINION AND ORDER |
| WASHINGTON COUNTY, ROB GORDON, both individually and in his official capacity as Sheriff, | ) ) ) ) | |
| Defendants. | ) ) | |

Leonard R. Berman
4711 SW Huber Street, Suite E-3
Portland, Oregon 97219

    Attorney for Plaintiffs

William G. Blair
Senior Assistant County Counsel
155 N. First Avenue, Suite 340 - MS 24
Hillsboro, Oregon 97124-3072

    Attorney for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiffs Jacob Miller and Zachary Penor bring a putative class action against defendants Washington County and Sheriff Rob Gordon (collectively, "the County") alleging that the County's policy of strip searching inmates is unconstitutional. Plaintiffs also identify a putative subclass, represented by Penor, of people strip searched pursuant to the County's strip search policy because they were transferred to the Washington County Jail from another correctional or detention facility. Before me are the County's Motion for Summary Judgment (#39), plaintiff's Motion for Summary Judgment (#37), plaintiff's Motion to Certify the Class (#25), and plaintiff's Motion for Leave to File Amended Complaint (#35).

## BACKGROUND

Plaintiffs have conceded that defendants are entitled to summary judgment as to Jacob Miller's claims. Accordingly, Miller is dismissed from the case.

I.    Zachary Penor's Arrest and Strip Search

The County provides the following information with respect to Zachary Penor's arrests:

On March 23, 2004, the County arrested Penor pursuant to an arrest warrant for Manufacturing a Controlled Substance II (methamphetamine), two counts, and Possession of a Controlled Substance (methamphetamine). The County strip searched him and placed him in the Medical Observation Unit of the Washington County Jail. The County also placed him on suicide watch based on the recommendation of a Registered Nurse at the jail pursuant to information from Penor's mother that he had recently talked about suicide with her, was not taking prescribed antipsychotic medication, and was not mentally stable. Penor does not challenge this strip search.

Penor was convicted of Manufacture of a Controlled Substance and Possession of a Controlled Substance and began serving his sentence at the Washington County Community Corrections Center on January 21, 2005.  He was not strip searched.

Upon his release, Penor's supervision was transferred from Washington County to Columbia County, where Penor lived.  On October 2, 2006, after a violent fight between Penor, the probation officers, and Columbia County Sheriff's deputies, Penor was transferred from Columbia County Jail to Washington County Jail to appear before the court.  The County strip searched him.  In his response to the County's Motion for Summary Judgment, Penor no longer challenges this strip search.

Penor was arrested again for violating probation; he was found in possession of controlled substances.  He was transferred from Columbia County to Washington County on October 25, 2006.  The County strip searched him before he joined the general jail population.  In his response to the County's Motion for Summary Judgment, Penor no longer challenges this strip search.

Finally, plaintiff was arrested in Columbia County for failing to report to his probation officer and failing to answer his probation officer's questions truthfully.  On December 19, 2006, he was transferred from the Columbia County Jail to Washington County.  The County strip searched him at "dress in" before he joined the general jail population.  The deputy who completed the "Dress-In Record" marked as the reason for the strip search, "Came in on transport from another correctional or detention facility."  Berman Decl. in Supp. of Pls.' Mot. for Class Cert., Ex. 3.[1]  The document directed the deputy to "check all [the reasons] that apply."  Id.

---

[1]The exhibit is not marked, but it appears plaintiffs intended the exhibit to be number three.

Among the other choices available were, "Criminal history of a drug or violent felony crime charges within the last 10 years" and "Reasonable suspicion the inmate was carrying contraband or concealing a medical condition," with the requirement that the deputy explain. Id. Penor challenges this strip search.

II.    The County's Strip Search Policy

Washington County Jail Policy J-14-4, adopted October 13, 2006 and in place at the time of Penor's December 2006 strip search, defined "strip search" to be

> [t]he visual inspection of a nude person to detect contraband or medical conditions. It includes a visual exam of all body cavities, including the genitals and anus. The person is not touched in any manner during the search, unless it is a forced search. It also includes the touching and visual inspection of disrobed clothing.

Gordon Decl., Ex. 1 at 2. Strip searches either occur at booking or at "dress-in." "Dress-in" requires prisoners to change out of their street clothes into inmate jump suits when they will be held in custody for a few days or longer. Only trained deputies perform the strip searches, staff may not use the searches as punishment, the searches occur in private, and with few exceptions the searches are performed by a deputy of the same sex as the inmate.

The policy in place at the time of Penor's December 2006 strip search defined an "inmate" to include "[a] person coming in on a transport for jail lodging." Id., Ex. 4 at 2. The definition for "arrestee" specifically excluded "a person coming in on a transport from another correctional facility." Id. at 1. The policy provided, in relevant part:

> In determining reasonable suspicion to strip search, deputies will, at a minimum, consider the following factors:
>
> a.    Evidence that the person was or may have been in possession of drugs, weapons, or contraband at the time of arrest
> b.    The person's demeanor, conduct, and appearance
> c.    Arrest history

Page 4 - OPINION AND ORDER

d.      The type and seriousness of current charges

The policy further provided that "deputies will strip search an arrestee or inmate" for the

following reasons:

b.      At dress-in if there is reasonable suspicion the arrestee or report-for-
        sentence inmate is or may be carrying or concealing dangerous contraband
        or is concealing a medical, mental health, or suicide-risk problem that may
        need treatment.  Staff <u>will</u> assume reasonable suspicion if the arrestee has
        a --

        (1)  Current arrest charge for a felony drug offense, or a violent or use-of-
        weapons felony crime.

        (2)  History of a felony drug offense, or violent or use-of-weapons felony
        crime arrest within the past 10 years.

        (3)  History of escape within the past 10 years.

*Note*:  Deputies <u>will not</u> strip search an arrestee or report-for-sentence inmate at
dress-in if the person was booked on a *minor* offense and there is no reasonable
suspicion.

. . .

d.      When searches further legitimate penological interests, which include but
        are not limited to the following:

        . . .

        (3)  When coming in on a transport from another correctional or detention
        facility.

(*Note*:  Court holding or a temporary holding facility, like at East Precinct or
Beaverton Policy [sic] Department, <u>is not</u> a correctional or detention facility.)

<u>Id.</u>, Ex. 4 at 6-7.

Sheriff Gordon reports that the "Dress-In Record" contains check boxes for the deputy to

identify the reason for the strip search.  He explains, "Many deputies do not check more than one

box, even though several may apply."  <u>Id.</u> at ¶ 20.

**DISCUSSION**

I.    <u>Cross-Motions for Summary Judgment</u>

    A.    <u>Legal Standards</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party.  <u>Universal Health Services, Inc. v. Thompson</u>, 363 F.3d 1013, 1019 (9th Cir. 2004).

    B.    <u>The County's Motion for Summary Judgment</u>

        1.    <u>The County's Motion is Denied</u>

As summarized above, the only remaining strip search at issue in this case arose out of Penor's December 19, 2006 transfer from Columbia County to Washington County Jail for probation violations.  Penor was charged with failing to report to his probation officer and failing to answer his probation officer's questions truthfully.  The County strip searched him as part of the "dress-in" process before he joined the general jail population.  Its rationale for strip searching Penor, as the deputy indicated on the "Dress-In Record," was that Penor "[c]ame in on transport from another correctional or detention facility."  Berman Decl., Ex. 3.

The Supreme Court has established a balancing test to determine the constitutionality of strip searches.  <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).  Accordingly, the court must balance "the need for the particular search against the invasion of personal rights that the search entails,"

which requires considering "the scope of the particular intrusion, the manner in which it is

conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559.

Since the Bell decision, the Ninth Circuit has established that while blanket strip searches of

individuals arrested for misdemeanor and other minor crimes are prohibited, searches of arrestees

charged with minor offenses may be warranted if jail officials have a "reasonable suspicion" that

the arrestee is carrying or concealing contraband. Giles v. Ackerman, 746 F.2d 614, 615-17 (9th

Cir. 1984) (per curiam) (overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d

1037 (9th Cir. 1999) (en banc)).  Reasonable suspicion exists when the officer responsible for the

search is aware of specific articulable facts and inferences from those facts that contraband will

be recovered. Kirkpatrick v. City of Los Angeles, 803 F.2d 485, 490 (9th Cir. 1986).

The County claims that its policy requires "a balancing of the individual privacy interests

against the need of the institution to maintain good order and discipline.  That balance depend[s]

on the history of the arrestee, the circumstances of his detention, his prior history, and nature of

his current charges."  Defs.' Mem. in Supp. of Mot. for Summ. J. at 12.  It rejects the notion that

its policy imposes a blanket standard for strip searches, as opposed to one requiring individual

evaluation of each detainee.  Here, the County suggests in its briefing, Penor's history of a felony

drug conviction (for possession and manufacture of methamphetamine), the October 2, 2006

arrest for his violent conduct with Columbia County sheriffs and probation officers, and his

probation violation for possession of controlled substances supported the County's strip search of

him prior to allowing him to enter the general jail population.  Indeed, the County states,

"Plaintiff Penor met the default standard of reasonable suspicion [due to] his felony convictions

for possession and manufacture of methamphetamine that underlay the probation he was arrested

for violating." Id. at 16.

The policy itself, however, states "[d]eputies will strip search an arrestee or inmate . . . [w]hen coming in on a transport from another correctional or detention facility." Gordon Decl., Ex. 4 at 6-7. The policy does not require deputies to consider, in conjunction with this transportation factor, the "reasonable suspicion" factors set forth elsewhere in the policy.

Moreover, there is no evidence that the deputies actually did consider the "reasonable suspicion" factors when deciding to strip search Penor. Despite being directed to "check all that apply," the only reason the deputy gave for Penor's strip search on December 19, 2006 was the fact that Penor "[c]ame in on transport from another correctional or detention facility." Berman Decl., Ex. 3. Notably, despite the County's assertion that Penor met the "default standard of reasonable suspicion" due to his drug conviction, the deputy did not choose as his reason for the strip search "[c]riminal history of a drug or violent felony crime charges within the last 10 years." Id. Sheriff Gordon reports that "Many deputies do not check more than one box, even though several may apply," Gordon Decl. at ¶ 20, but does not indicate that a deputy's failure to check all the applicable boxes is a violation of County policy. Additionally, the County does not submit any evidence from the deputy who carried out the strip search as to the reason for the search. In other words, the County has not provided evidence that it had an individualized reasonable suspicion to strip search Penor.

Accordingly, in order to justify its blanket policy of strip searching all inmates that are transported from another correctional or detention facility, in the absence of particularized findings, the County must show how these measures are "reasonably related" to the County's "interest in maintaining security." Way v. County of Ventura, 445 F.3d 1157, 1161 (9th Cir. 2006).

Sheriff Gordon has explained in his declaration that a person being transferred from another institution where he has access to contraband is likely to attempt to bring that contraband with him.  However, because the County insists in its briefing that its policy imposes the requirement of reasonable suspicion for all strip searches, and neglects to point the court to the portion of its policy allowing strip searches for the "legitimate penological" interest of searching individuals transported from another correctional or detention facility, the County has not explained how its policy of searching transported individuals is constitutional.  In other words, the County failed to brief the only potential basis supported by the evidentiary record on which the Court may grant summary judgment.  As a result, I must deny summary judgment at this time.

I note that the County has failed to cite Houston v. County of Washington, CV-06-1123-ST, 2008 WL 474380 (D. Or. Feb. 19, 2008), explain whether or how this case is different, or why I should not follow Judge Stewart's conclusion that the County's blanket policy of strip searching all transported individuals is not justified by its need for institutional security.[2]  The most judicially efficient way of resolving these issues is to allow the County to file a second motion for summary judgment.

        2.     Sheriff Gordon's Motion is Denied With Leave to Renew

Plaintiffs offer no argument to refute Gordon's assertion that he cannot be sued individually for the adoption of the County's policies, nor do plaintiffs respond to Gordon's argument that if he is being sued personally he is entitled to qualified immunity.

---

[2]I note, for example, that the policy at issue here is different from the July 15, 2005 version of the Washington County Jail Policy J-14-4 at issue in Houston by virtue of the exclusion of temporary holding facilities from the term "correctional or detention facility."

A supervisor may be liable "without overt personal participation . . . if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (internal quotations omitted). Accordingly, Gordon may be sued for his adoption and administration of the allegedly unconstitutional policy.

Since I have not concluded, however, whether plaintiff has alleged a constitutional violation, I deny this motion with leave to renew.

Similarly, I am unable to issue a ruling on the County's alternative argument that Gordon is entitled to qualified immunity. In a qualified immunity analysis, the court may first determine if the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 818 (2009) (court may exercise its discretion in deciding this question first).

Accordingly, I deny this motion with leave to renew.

C.      Penor's Motion for Summary Judgment is Denied

Miller's Motion for Summary Judgment is denied for the reason that plaintiffs concede the County is entitled to judgment as to all of Miller's claims.

The County does not respond to Penor's Motion for Summary Judgment. If it intended its memorandum in support of its own motion to be the response, it has not informed the Court. Nevertheless, as I have indicated above, neither party has properly briefed the question of whether the County's blanket policy of strip searching all transported individuals is justified by its need for institutional security. Penor solely relies on Houston without registering the fact that the policy before Judge Stewart was slightly different from the one at issue here. As a result,

Penor is not entitled to summary judgment at this time.  Penor, too, is entitled to file a second

motion for summary judgment.

II.    Plaintiffs' Motion for Class Certification is Deferred

      A.    Legal Standards

Rule 23 allows suits to go forward as class actions only if:

> [T]he class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the
> class [and] [t]he court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods for the fair
> and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(a) and (b)(3).

A court may certify a class only if it is "satisfied, after a rigorous analysis, that the

prerequisites of Rule 23(a) have been satisfied."  Hanon v. Dataproducts Corp., 976 F.2d 497,

509 (9th Cir. 1992) (quoting General Tel. Co. Southwest v. Falcon, 457 U.S. 147, 161 (1982)).

The party seeking class certification bears the burden of proving each of the elements of Rule 23.

B.    Discussion

Plaintiffs initially defined the class to consist of "[a]ll persons who have been or will be

placed into the custody of the Washington County Jail after being charged with misdemeanors,

violations, violations of probation or parole, traffic infractions, civil commitments or other minor

crimes and were or will be strip searched upon their entry into the Washington County Jail

pursuant to the policy, custom and practice of the Washington County Sheriff's Department and

Washington County."  Amended Complaint ¶ 8.  In their Memorandum in Support of Plaintiffs'

Motion for Class Certification, plaintiffs clarified that the class would consist of people who,

among other things, were subjected to strip searches "pursuant to Washington County's blanket policy, practice and custom which required that all arrestees be strip searched . . . ." Pls.' Mem. in Supp. of Class Action Certification at 1.

Plaintiffs also identified two subclasses in their briefing: 1) persons who were taken directly to the Washington County Jail upon arrest, and 2) persons who, from December 1, 2004 up to the time the practice ceases, were transferred from another jail or corrections facility. Plaintiffs seek to amend their Complaint to reflect their theory about the classes.

As an initial matter, the County has correctly pointed out that its policy does not require that "all arrestees be strip searched." With the exception of transported individuals, to strip search a person, the policy requires "reasonable suspicion" that an individual is carrying contraband or criminal evidence, which in turn requires consideration of whether the person may have been in possession of drugs or weapons, the person's arrest history, and the person's current charges. These factors preclude a finding that there are "common questions of law or fact." Whether a particular strip search was improper turns on the facts of the particular case and is not conducive to class treatment. See Califano v. Yamasaki, 442 U.S. 682, 701 (1979) (if "differences in the factual background of each claim will affect the outcome of the legal issue," class certification is improper).

Additionally, since plaintiffs have conceded that the County is entitled to summary judgment as to Jacob Miller's claims, the first subclass no longer has a representative. The only strip search Penor challenges was the one that took place after his transfer from Columbia County. He was not "taken directly to the Washington County Jail upon arrest."

As a result, only the second subclass remains represented. Given the radical change in plaintiffs' case through the summary judgment process, it is prudent to defer ruling on the

Motion for Class Certification. Since I will permit additional dispositive motions, which may result in judgment for the County, it is most judicially efficient to defer ruling on the class certification at this time. See Wright v. Schock, 742 F.2d 541, 544 (9ᵗʰ Cir. 1984) ("reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation"). I do not perceive any prejudice to plaintiffs as a result of this delay.

III.    A Stay of This Case is Appropriate

I note that a recent case involving San Francisco's strip search policy is currently on review *en banc*. Bull v. City and County of San Francisco, 539 F.3d 1193 (9ᵗʰ Cir. 2008), reh'g en banc ordered by, 558 F.3d 887 (9ᵗʰ Cir. Feb. 20, 2009). Bull held that a blanket policy of strip searching arrestees due to concerns about the introduction of contraband into the general jail population, without any other factors, was unconstitutional. Additionally, Houston has been held in abeyance pending the outcome of the *en banc* review of Bull. Since the law may be in flux, I conclude it is most judicially efficient to stay this case pending the outcome of the *en banc* review.

**CONCLUSION**

The County's Motion for Summary Judgment (#39) is denied. Plaintiffs' Motion for Summary Judgment (#37) is denied. Plaintiff's Motion for Class Certification (#25) is deferred. Plaintiffs' Motion for Leave to File Amended Complaint (#35) is granted. Plaintiff should file a Second Amended Complaint clarifying his allegations with respect to the only potential class remaining.

This case is stayed pending the outcome of the *en banc* review of <u>Bull v. City and County</u>

<u>San Francisco</u>, 539 F.3d 1193 (9th Cir. 2008).  Once the Ninth Circuit has issued a ruling in <u>Bull</u>,

the Court will contact the parties and request the additional briefing discussed above.

IT IS SO ORDERED.

Dated this _____1st_____ day of July, 2009.


    ___/s/ Garr M. King_____
Garr M. King
United States District Judge